In the Matter of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property Necessary for the Extension of a Public Beach in the Borough of Brooklyn.

REALTY ASSOCIATES, Appellant.

(Argued April 15, 1931; decided May 12, 1931.)

*William N. Dykman, Sigourney B. Olney* and *Jules Haberman* for appellant. Title to lands submerged by avulsion is not lost. (*Mulry* v. *Norton*, 100 N. Y. 424; *Matter of City of Buffalo*, 206 N. Y. 319; *Nebraska* v. *Iowa*, 143 U. S. 359; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605; *Schwartzstein* v. *B. B. Bathing Park*, 203 App. Div. 700.) The title to land cannot be abandoned. (*East Tennessee Iron & Coal Co.* v. *Wiggin*, 68 Fed. Rep. 446; *Marbury* v. *May*, 9 Fed. Rep. [2d] 587; *Philadelphia* v. *Riddle*, 25 Penn. St. 259; *Tarver* v. *Deppen*, 132 Ga. 798; *Kreamer* v. *Voneida*, 213 Penn. St. 74; *Northern Pacific Ry. Co.* v. *Tacoma Junk Co.*, 138 Wash. 1; *Cameron* v. *Bustard*, 119 Wash. 226; *Cox* v. *Colossal Cavern Co.*, 210 Ky. 612; *Allen* v. *West Lumber Co.*, 244 S. W. Rep. 499; *Southern Coal & Iron Co.* v. *Schwoon*, 145 Tenn. 191; *Powell* v. *Bowen*, 279 Mo. 280; *Childers* v. *Kennedy*, 189 Ky. 179; *Reynolds* v. *Trawick*, 78 So. Rep. 827; *Miller Co.* v. *Grussi*, 90 Conn. 555.)

*Arthur J. W. Hilly, Corporation Counsel* (*Patrick S. MacDwyer* of counsel), for respondent. Appellant may not claim title by avulsion, since the area had not been restored or regained as land at the date when it was included in the proceeding. (*Arkansas* v. *Tennessee*, 246 U. S. 158; *Stockley* v. *Cissna*, 119 Fed. Rep. 812; *Keel* v. *Sutton*, 142 Tenn. 341; *City of Chicago* v. *Ward*, 169 Ill. 392; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605; *Matter of City of Buffalo*, 206 N. Y. 319; *People* v. *Steeplechase Park Co.*, 82 Misc. Rep. 247; *Mulry* v. *Norton*, 100 N. Y. 424; *Benson* v. *Townsend*, 7 N. Y. Supp. 162; *Van Deventer* v. *Lott*, 172 Fed. Rep. 574; *Schwarzstein* v. *B. B. Bathing Park, Inc.*, 203 App. Div. 700.) The facts and circumstances show that the area has become a permanent part of the ocean by acquiescence. (*O'Donnell* v. *Kelsey*, 10 N. Y. 412; *Woodbury* v. *Short*, 17 Vt. 387; *Ford* v. *Whitlock*, 27 Vt. 265.)

O'BRIEN, J. In the year 1925, when title vested in the city of New York in this condemnation proceeding,

appellant was the record owner of upland and land under water at Brighton Beach. By the exertion of its delegated power of eminent domain in this proceeding, the city acquired title to all of the upland but it asserts title to the lands under water by virtue of grants from the State. The premises appear on the damage map as three parcels of upland and five parcels of land under water. The submerged area formerly constituted upland, but, as the result of violent storms between the years 1878 and 1894, the Atlantic ocean tore away a large tract and by these avulsions much of the land, which had been conveyed to appellant's predecessor by deed in 1875 and through mesne conveyances transferred to it, now lies under water. By the authority of statutes enacted during the years 1918 to 1925, inclusive, such title as the State might possess in lands under water from the westernmost point of Coney Island to the westerly boundary line of Nassau county was granted to the city of New York. Awards have been made to appellant for the taking of the upland and the city has acquiesced in them. At Special Term, awards in excess of $1,800,000 were made for the lands under water described as damage parcels 10, 12, 13, 16 and 18, but that part of the final decree was reversed on the law and the facts, the awards for them were vacated and appellant's claim as to them was disallowed. The Appellate Division found that these parcels as the result of avulsions have been submerged by the Atlantic ocean for more than thirty years, that they have not been reclaimed and that the evidence proves an intention on the part of the upland owners to abandon them.

Although claimant held title by deed to all these parcels, respondent argues that, during the time that the land is submerged, the title which had vested in the upland proprietor, claimant's predecessor, became lost to him and his successors and passed to the sovereign. It concedes, however, that the title could have been regained by reclaiming and filling the land under water or even

by natural restoration but insists that, in the absence of either process, title remains with the city as grantee of the sovereign State. Assuming that land lost by erosion returns to the ownership of the State, we think that the same conclusion does not follow the effects of avulsion. In some treatises and even in judicial opinions in other States and in England occur confusing statements which might lead to an inference that in cases of avulsion their writers believed that private title was temporarily lost and was restored only when the waters receded or the land was artificially replaced. In this State the subject may not have been authoritatively settled by any actual decision which required adjudication of this question, but the expressions of opinion by distinguished judges reveal general concurrence in the view that the private owner is not divested even temporarily of his title. (*Mulry* v. *Norton*, 29 Hun, 660, 665; 100 N. Y. 424, 436; *Matter of City of Buffalo*, 206 N. Y. 319, 325, 327; *Schwartzstein* v. *B. B. Bathing Park*, 203 App. Div. 700, 703; *People* v. *Steeplechase Park Co.*, 82 Misc. Rep. 247, 255, 256; 218 N. Y. 459, 480.) We accept this doctrine and now pronounce it law. The logical deduction from these judicial utterances is that the right to regain the land rests solely on the principle that the title to it remains in the riparian owner. It is not suspended by a physical catastrophe. We reject the theory that, according to the tangible character of the land, title can alternate between the individual and the public. It is static, always vested in one or the other, and we hold that it remains with the individual owner of the soil which had formerly been upland. The boundary of his title rather than the material extent of the land is the essential point for consideration. The State granted to the city whatever interest it might possess in these lands whose surface had been washed away. It had no interest except the public right of navigation over waters covering earth which previously had been upland.

The point also is made that even though private title may not have been suspended during the time of submergence, this area had, by acquiescence of the owners, become a permanent part of the ocean bed. This principle for which respondent contends is different from the rule applied in cases where by acquiescence through a term of years the boundary of land may be fixed by practical location. Without explicitly arguing in support of the principle announced by the Appellate Division, respondent in effect does invoke the doctrine that title has been lost by evidence of an intention to abandon the lands. We cannot agree with such a contention. While an easement may be capable of abandonment and, upon proof of acts clearly and unequivocally indicating such an intent (*Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176), it will be deemed abandoned, the rule is different in respect to title. (Washburn on Real Property [6th ed.], vol. 3, § 1888; *East Tennessee I. & C. Co.* v. *Wiggin*, 68 Fed. Rep. 446, 449.) Failure to assert a valid title does not amount to an abandonment nor operate to extinguish it. (*Marbury* v. *May*, 9 Fed. Rep. [2d] 587, 588.) Where one acquires a title by deed, it will not be affected by non-user unless there is a loss of title in some of the ways recognized by law. Mere non-user of an easement, however long continued, does not create an abandonment. (*Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474, 484.) Neglect for forty years to take possession or to bring action has been held not to constitute an abandonment. " Precisely what is meant by ' an abandoned ' legal title is hard to define. If it is the valid legal title, it is inconceivable how it can be abandoned. * * * If there has not been a devolution of title by operation of an adverse possession, their title is perfect, and their right of recovery would not be affected by a theoretical abandonment predicated alone upon a neglect of their estate." (LURTON, J., in *East Tennessee I. & C. Co.* v. *Wiggin, supra.*)

The order of the Appellate Division should be modified in accordance with this opinion and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Ordered accordingly.